## JAMES B. HUTCHINSON *vs.* JOHN GORDON.

An auctioneer cannot dispute the title of a person for whom he sells goods, in an action against him for the amount of sales.

It seems that an assignment *giving a preference to creditors* is void, whether executed here or out of the state. (As to which see *Maberry* and *Pollard* vs. *Shisler*, garnishee, 1 *Harr. Rep.* 349, and the note to that case 354.)

The bailiff to the jury permitted to be sworn, to prove an irregularity in the jury making up their verdict.

CASE. Narr. in assumpsit. Pleas, non-assumpsit; payment; discount, and the act of limitation.

The count relied on was for money had and received to the plaintiff's use. The defendant was an auctioneer in the city of Wilmington, and the money came into his hands as such, under the following circumstances. Cyrus Lamborne being possessed of a leasehold interest in certain property in Wilmington, directed an agent to sell it at a certain price, but no sale was made until after Lamborne made a general assignment to Hutchinson, in the city of Philadelphia; when Hutchinson wrote to the agent to have it sold at public vendue. He advertised it either as the property of Lamborne, or as property

which had belonged to Lamborne, but he proved that Gordon was
informed he was acting by orders from Hutchinson, and that the sale
was on his ancount.   Lamborne was indebted to Gordon, and on this
account he held on to the proceeds of sale.   The tenant of Lamborne
remained in possession until after the sale.   A witness (Mr. Garrett,)
proved that Lamborne wrote to him that he was a *preferred* credi-
tor in the assignment, to the amount of $100; which sum the assignee
paid to him.

The defendant now called, under notice to the other side, for two
deeds of assignment executed to plaintiff by Cyrus Lamborne; when,

*Gilpin*, for plaintiff, produced a paper which he stated to be the
only assignment of which he had knowledge.   *Wales*, for defendant,
insisted on the production of another.

*The Court* said: the notice covers another assignment.   It is not
produced.   The defendant may proceed to give secondary evidence
of its contents; first proving its existence.

*Mr. Wales* declined reading to the jury the assignment which was
produced, and the question arose, whether the other side could not
read it.   *The Court* said, if Mr. Wales inspected it, he would make
it evidence.   He refused to examine it.

The defendant's counsel now moved a nonsuit.

*Wales*, for defendant:

This is an action by Hutchinson *in suo jure*, and not as assignee
of another, and by the proof before the court, it is apparent that he
is not entitled to this property or its proceeds, unless it be as the as-
signee of Cyrus Lamborne.   The house was known as the property
of Lamborne; was advertised as such; the proceeds will, therefore,
be regarded as his; or, if claimed by plaintiff under an assignment,
the suit should have been as assignee, and not in his own right.

*Gilpin.*—According to the proof the money claimed is the pro-
ceeds of the sale of *personal* property; a *chattel*, which had belonged
to Lamborne; but which the defendant sold under the orders and on
account of Hutchinson.   Gordon is therefore bound to answer to
*him* for the proceeds; and, being personal property, it was not neces-
sary to claim under any assignment.

*By the Court.*—The deed of assignment has not been given in evi-
dence, though we recommended that it should be, as a paper having
an important bearing on the cause.   We can, therefore, give no
opinion as to its effect.   The testimony of Thomas Garrett is that he
ordered the property sold on account of Hutchinson, though he ad-
vertised it as property of Lamborne, or which had been Lamborne's.
If there is any doubt about his having made this known to the

auctioneer, it must go to the jury to say how it was ordered to be sold; by whom; and on whose account. If an auctioneer sell property placed in his hands by another, or by the agent of another, it does not lie in his power to controvert the title of the person so placing it in his hands; at least in an action against him for the amount of sales. If a third person were claiming from him the property, or its proceeds, it might be a suitable defence for him; but, on the facts now before the court, it is no defence for him to say that this is not the property of Hutchinson, if he received and sold it as such. Nonsuit refused.

The case went on before the jury, the plaintiffs counsel contending that the assignment from Lamborne to Hutchinson was *proved;* such fact having been asserted by the other side, and admitted on his part. He had offered them the deed and they refused to put it in evidence; it was not for them, then, to say that it contained any preference such as would make it illegal. That the property was placed in Gordon's hands and sold as the property of Hutchinson; and it was not in his power now to retain the proceeds for a debt of Lamborne's. He got possession of the money as the agent of Hutchinson.

For the defendant it was urged that the property was Lamborne's, being still in the possession of his tenant, and sold as such : that there was no proof that it had been assigned to Hutchinson; and the assignment, if made, was illegal, because it preferred certain creditors. Lamborne wrote to Garrett that he had *preferred* him. The assignment also was void, because it was not accompanied by the possession. (*Digest,* 75.)

To this it was answered, that bills of sale without possession, though void as to third persons, were good as against the vendor.

*Per curiam :*

J. M. CLAYTON, *Chief Justice.*—The first question is, whether the house was sold as the property of Lamborne or of Hutchinson, which is a question of fact for the jury. If sold as the property of Hutchinson, then the jury will have to consider whether it was in fact his, and this depends on the legality of the assignment from Lamborne to him. We can give no opinion on this deed of assignment, because they have refused to give it in evidence. The jury must, therefore, determine from the parol evidence, being such as the parties have chosen to lay before them, whether this assignment did give an illegal preference; if so, the deed is void, whether executed here or in Philadelphia, as to its operation on property here. Our law considers it fraudulent and makes it penal to prefer creditors in any such assignment. If the jury have no satisfactory evidence that this assignment did give a preference, it is good to convey the property.

Though not accompanied by the possession it is good against Lamborne, and against this defendant; for Lamborne could not deny it.

The plaintiff had a verdict, and there was a motion for a new trial, the defendant offering to prove by the bailiff that the jury, being equally divided, agreed to send for the deed of assignment from Lamborne to Hutchinson; and, in case it was not sent to them, to give a verdict against the party who objected to their having it.

*The Court,* referring to the case of *Pierce* vs. *Patterson,* in the late Superior Court, (*a,*) permitted the bailiff to be sworn.

(*a*) Abraham Pierce *vs.* Robert Patterson:

Motion for a new trial *without* costs, on the ground that the jury had drawn lots for their verdict.

The bailiff to the jury was produced to prove that the case was decided by lot.

*Hall,* for plaintiff, objected that the bailiff was not competent. He is bound by his oath to keep the jury together until they agree in a proper manner upon their verdict; and if he permit them to separate before they have so done, he violates his oath. His case is stronger than that of a juror, and a juror is clearly not admissible as a witness to prove such fact. 1 *Term Rep.* 11. He also cited the case of *Patrick Gillaspy* vs. *Jonas Garrett,* in the Common Pleas, May Term, 1805, in which he said it was decided, that a juror should not be permitted to give testimony of the jury having cast lots for their verdict.

(*Ridgely* said he was counsel in the case of *Gillaspy* vs. *Garrett,* but had no recollection of such a decision. He produced his notes of the case, which made no mention of the point. He mentioned a case lately decided in Sussex, on this subject.

*Chief Justice* JOHNS, read his notes of that case. It was *Elliott's lessee* vs. *Bloxsom and Mosely.* Motion for a new trial on three grounds, the last of which was that the jury had decided by casting lots. Tristam Handy, the bailiff, swore that from circumstances he believed the jury had drawn lots; and *Robinson,* of counsel for defendant, offered to prove it also by a juror, and cited 6 *Bac. Abr.* 657, *Wilson's notes*; and 4 *Dall. Rep.* 112. The court did not decide whether the juror might be sworn, holding the evidence of the bailiff sufficient, and they granted a new trial on payment of costs.)

*T. Clayton,* for Pierce, now cited 4 *Bin. Rep.* 155; 5 *Burr. Rep.* 2687, contending that the bailiff was not a competent witness, as his evidence would tend to criminate himself. His permitting the jury to separate, knowing they had not agreed on a verdict, otherwise than by casting lots, was a gross violation of duty against which he had expressly sworn.

*Ridgely,* for defendant. The sum of the objection is, that the bailiff shall not be compelled to criminate himself, and the rule of law goes no

He did not prove what was expected, and the new trial was refused.

*Gilpin*, for plaintiff, ·
*Wales*, for defendant.

further. It is for his protection. He here waives any such protection, and is willing to be sworn.

JOHNS, *Chief Justice.*—The bailiff is admissible *ex necessitate rei.*

Robert Catlin, the bailiff, then swore that the jury, being equally divided, and finding it impossible to agree in any other way on a verdict, drew lots by placing in a hat an equal number of slips of paper, marked for the plaintiff and defendant respectively. Of the twelve ballots drawn out, the plaintiff had seven and the defendant five, whereupon they gave their verdict for the plaintiff.

The defendant then offered several of the jury to prove the same thing ; (as to which see 1 *Strange* 642, note.) The court said it was unnecessary, and they would not hastily decide so important a question.

*Per curiam.* We are unanimously of opinion that the verdict should be set aside, and a new trial granted. 5 *Com. Dig.* 505 ; *Bull. N. P.* 352 ; 2 *Tidd. Prac.* 817 ; 1 *Strange* 642.

*Davis*, Justice, said he was decidedly of opinion that the testimony was inadmissible ; but the bailiff having sworn to the drawing of lots, he concurred in granting the new trial.

On the question of costs ;

*Hall* contended, that in all cases of verdicts set aside, when there was no fault imputable to the parties, it was done on the payment of costs. He cited four cases in the Court of Common Pleas. 1 Lessee of *Baker and Comegys* vs. *Dawson and Brinckloe*, May Term 1803, in which the court directed the plaintiff to be called ; but he refused to submit to a nonsuit, and the jury afterwards found a verdict for him. New trial granted. 2d. *Barker* vs. *Reynolds*. 3d. *Reynolds* vs. *Moor and Smith*, new trial granted May 1807, because the verdict was against! aw and evidence. 4th. *Harper and Harper* vs. *Bailey*, new trial May 1802, on the ground of misconduct of one of the jurors.

*Brinckloe.*—The question of costs on granting new trials, is subject to no precise rules. Every case depends on its own particular circumstances. We shall content ourselves with referring the court to but two of the numerous cases in which verdicts have been set aside without costs. 1st. *Edie, et al* vs. *East India Company*, 2 *Burr. Rep.* 1228, because the verdict was contrary to law : 2d. 1 *Strange*, 642, where the jury drew lots.

*Per curiam.* The defendant must pay the costs of the term. Though we would not be understood as laying this down as the universal rule, we strongly incline to such opinion. (But the case being mentioned the next

day, the chief justice took occasion to say he much doubted the propriety
of this, as a general rule.)

*Clayton* and *Hall,* for plaintiff.

*J. G. Brinckloe* and *Ridgely,* for defendant.